**Hubert W. AMBROSE, Plaintiff,**

v.

**NORFOLK DREDGING COMPANY, a corporation, and The United States of America, Defendants.**

**Civ. A. No. 2754.**

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 29, 1960.

**530**

Steingold, Steingold & Chovitz, Norfolk, Va., Israel Steingold, Richmond, Va., for plaintiff.

Jett, Sykes & Coupland, Roy L. Sykes, Norfolk, Va., for Norfolk Dredging Co.

Joseph S. Bambacus, U. S. Atty., Richmond, Va., and Alan Raywid, Trial Atty., Dept. of Justice, Washington, D. C., for the United States.

WALTER E. HOFFMAN, District Judge.

This matter having come on for trial during the period from November 12, 1959, through November 17, 1959, from the pleadings and proof adduced by the parties, and after due consideration of the arguments presented by counsel for the respective parties thereon, the Court hereby makes the following findings and conclusion of law.

### Findings of Fact

1. The plaintiff, Hubert W. Ambrose, was at all times mentioned herein a resident and citizen of the State of North Carolina.

2. The defendant, Norfolk Dredging Company, was at all times mentioned herein the operator of and in control of the Dredge Talcott which was at all times hereinafter mentioned in the performance of a contract between the United States and the Norfolk Dredging Company for the dredging of a channel in Oregon Inlet.

3. That the defendant, United States of America, was at all times mentioned herein the contracting party for the dredging operation of the channel aforesaid.

4. The plaintiff, Ambrose, was at all times mentioned herein employed by the Norfolk Dredging Company in the capacity of a seaman aboard the Dredge Talcott while said dredge was in the performance of the aforementioned contract between the United States and the Norfolk Dredging Company.

5. That the defendant, United States, at all times mentioned herein was represented at the site of the dredging operation by Mart Edward Bloodgood, a salaried employee of the United States, who was charged with the responsibility of observing and inspecting the performance of the dredging operation under the contract.

6. That at the time and place of the accident hereinafter mentioned the plaintiff, Ambrose, and the Government inspector, Mart E. Bloodgood, were in a small boat owned by defendant, Norfolk Dredging Company, and were in the process of attempting to raise an anchor or grapple attached to a buoy or marker used to define the limits of the area in which the material from the dredging operations was to be deposited. At the time hereinafter stated Ambrose was under the direct control of Mart E. Bloodgood.

7. That the small boat owned by defendant, Norfolk Dredging Company, was an ordinary skiff of 16 foot length, 4 foot breadth and 18–20 inch depth made of Cyprus wood with two thwarts and powered by a 7½ horse power Evinrude outboard motor, and in all respects seaworthy and suitable for the purposes for which it was being used at the time in question.

8. That the said buoy or marker owned by defendant, Norfolk Dredging Company, consisted of a white, quart-size float anchored by a 10-pound grappling hook and attached to the float by a ¾ inch manila line.

9. That the boat came alongside the aforesaid buoy marker and the engine was stopped, and with the buoy marker on the starboard side of the boat at approximately midships and with the boat dead in the water, Bloodgood and plaintiff, Ambrose, together attempted to raise the buoy marker, line, and anchor, and were successful in getting the buoy into the boat and approximately three feet of slack out of the line.

10. That in attempting to raise the anchor and loosen the same the inspector instructed the plaintiff, Ambrose, to take the slack out of the line and a turn around the riser or stringer, the riser or stringer being a supporting piece of wood three inches by one inch which ran the entire length of the topmost portion of the side of the skiff and was separated from the outboard side of the skiff by an inch or more by the ribs or frames of the skiff which were approximately 14 inches apart.

11. That the plaintiff, Ambrose, doubled the line, rove the line over the side of the skiff and between the side of the skiff and the riser or stringer and took a full turn around the riser or stringer. The plaintiff then, pursuant to instructions from Bloodgood, sat down on the starboard side of the foreward thwart or seat, facing the bow and to the right side of the boat, braced his left foot forward against a frame or rib of the starboard side of the skiff and held the bight of the line in his hands.

12. That Bloodgood went to the stern of the skiff and when Ambrose had positioned himself as described above, Bloodgood put the engine ahead in an attempt to cause the anchor to become loose.

13. That for the size and employment of the said skiff a 7½ horse power outboard motor is adequate but not excessive power.

14. That taking a turn with a line around a fixed or immovable object is a standard and basic maneuver in seamanship, and when properly executed enables a seaman by use of the friction of the line against the fixed object to sustain or withhold a force equal to the strength of the line and without danger or hazard to the seaman.

15. That the standard procedure in raising an anchor from a small boat is to take all slack out of the line leading to the anchor, to take a turn about a fixed object and have a seaman stand by the line keeping the slack out of the line, and having another seaman put the engine or power of the boat ahead so as to use the weight of the boat and the power of the motor or engine to cause the anchor to become loose.

16. That the plaintiff, Ambrose, in the course of his employment as a seaman, sustained a lumbar sprain and that said injury was not due to any unseaworthiness of any vessel or skiff, nor was it due to the fault or carelessness of any employee, agent or representative of the United States, or of any employee, loaned servant, agent or representative of the Norfolk Dredging Company. The Court further finds that Hubert Ambrose was either injured or a prior condition was aggravated while in the small boat aforementioned, but not so injured or condition aggravated as a proximate result of any unseaworthiness or negligence, in whole or in part.

## Conclusions of Law

1. That the Court has jurisdiction over the action against the United States under the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671–2680.

2. That the plaintiff, Ambrose, at the time and place of the incident herein was engaged in and in the furtherance of a lawful and proper pursuit or activity connected with the dredging operation of his employer, the Norfolk Dredging Company.

3. That the placing, maintenance, and removal of the stakes, markers, and buoys was the contractual obligation of the dredging contractor, the Norfolk Dredging Company.

4. That the skiff and its appurtenances were in all respects found proper and seaworthy.

5. That the United States, its agents, employees or representatives are free from fault or negligence which proximately caused or proximately contributed to plaintiff's injuries.